UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHARLES S. HAYES, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:16-CV-730-JD ) |
| BOARD OF COMMISSIONERS OF THE COUNTY OF ST. JOSEPH, | ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Charles S. Hayes ("Hayes Towers") filed an amended verified complaint seeking declaratory relief against the Board of Commissioners of the County of St. Joseph ("the Board")[1] because it denied Hayes Towers a Special Use Permit ("Permit") to build a telecommunications tower on a residential plot of land that it leased for that purpose. Hayes Towers moves for summary judgment arguing that the Board's decision to deny the Permit is in violation of the Telecommunications Act of 1996 ("TCA") because it was not based on "substantial evidence."[2] Jurisdiction is established pursuant to 47 U.S.C. § 332(c).

## I. FACTUAL BACKGROUND

The facts in this matter are not in dispute.[3] After determining that a deficiency existed in its cellular network in Harris Township, Granger, Indiana which caused dropped calls and

---

[1] At the time, the Board was comprised of the following individuals: Mr. Robert L. Kruszynski, Mr. Corey Noland, Ms. Diana Hess, Mr. Rafael Morton, Mr. Mark P. Telloyan, Mr. Mark A. Catanzarite, Mr. Robert McCahill, Mr. Mark Root, and Mr. James O'Brien.

[2] Pursuant to General Order No. 2017-4, this case was reassigned to the undersigned after briefing was complete and the Court apologizes for the resulting delay in issuing this ruling.

[3] The parties agreed that the documents filed at DE 24, as amended at DE 29, constitute a certified copy of the complete record of proceedings before the Board [DE 27].

customer complaints, Verizon began working with the Harris Township Trustee in early 2014 regarding the installation of new equipment. Verizon offered to rebuild an existing tower on the Township's fire station property so that it would have the capacity to service multiple cellular providers, including AT&T who was already paying the Township to use the existing tower. Complications over the ownership of the fire station tower and plans to expand the fire station left the Trustee unwilling to enter an arrangement with Verizon at the time. After two years of negotiating, Verizon contends that it was ultimately "shot down" by the Trustee.

Thereafter, Verizon engaged Hayes Towers to build and maintain a tower that would allow Verizon and other carriers to lease space on it for necessary antennas and equipment. In June 2016, Hayes Towers entered into a lease with property owner Amir Pouya to build its telecommunications tower on his residential plot of land located off of Elm Road. On August 3, 2016, the Board of Zoning Appeals ("BZA") unanimously voted to send the Permit to the Board with a favorable recommendation.[4] On August 22, 2016, the Harris Township Trustee indicated that given resident concerns about locating a new tower on residential land, it would be open to working toward installation of a new tower near the fire station, which would maintain lease revenues for the Township [DE 29-1 at 11]. Hayes Towers and the Trustee then met and reopened discussions about this newly proposed construction site (later identified as being on or near the Township's park). On September 20, 2016, the Trustee informed board member Jamie

---

[4] Because Hayes Towers intended to build a new wireless communications facility ("WCF") in a residentially zoned district, St. Joseph County zoning ordinances require a special use permit. *See* St. Joseph County Planning and Zoning, Special Regulations for Wireless Telecommunications Facilities, Chapter 154.457(C). Further, in St. Joseph County, the elected Board (not the BZA) has the final say on all variances and special use requests because of the population of the county. Ind. Code § 36-7-4-918.6.

O'Brien that "[t]he township stands ready to continue working toward the use of township land for a tower." *Id*.

A public hearing was held on September 27, 2016, during which the Board reviewed and discussed the Hayes Towers' Permit request. The transcript of this meeting [DE 29-1 at 77-84] reveals that the following transpired: the BZA representative indicated that despite some opposition to a new tower by those living in close proximity to its proposed residential location, the BZA gave a favorable recommendation for the Permit.

Evidence supporting the Permit's passage was then discussed during the Board meeting, including: the need for better cellular service in the area given the number of customer complaints and the increased use of cellular service (including use for emergency calls); confirmed compliance with general standards for special use permits and with the Federal Communications Commission's ("FCC") regulations for emissions; the existence of an agreement by Hayes Towers not to interfere with income generated by Harris Township from AT&T for AT&T's use of the existing tower on the fire station's property; the history of Verizon's earlier negotiations with the Trustee for use of the fire station property; the willingness of Hayes Towers to use landscaping and fencing around the new tower which would be located toward the back of the residential property among trees and an existing high tension power line; and independent appraisal results indicating that the new tower would not likely have a negative impact on nearby property values.

Evidence supporting the rejection of the Permit's passage was also discussed during the Board meeting, including: generalized concerns by local residents about safety during and after construction; the possible impact of radio frequency emissions; the possible negative impact of the construction on the environment and wildlife; the unappealing aesthetics of the tower and

3

perceived negative impact that it would have on nearby home values; the perceived disparate impact of attempting to place another tower in a less affluent part of the county; the uncertain need for better coverage; and, the potential for alternate sites that would generate revenue for the Township while being located near an existing tower (especially given the Trustee's willingness to consider allowing a new tower to be built near the fire station in the Township park). Because Mr. O'Brien was absent from the meeting, he submitted a letter which indicated that as the representative for the district involving the proposed tower's residential placement, he had received "[u]niversal opposition" to the tower from "every single person, other than Ms. Hayes who is advocating for this project." Mr. O'Brien referenced the Trustee's willingness to locate the tower on Township property near the fire station, which his constituents appeared to prefer. Given the various concerns Mr. O'Brien raised, he requested that his fellow board members vote against the Permit (reminding them that he had consistently voted with board members who represented districts where zoning issues arose).

Following the reading of Mr. O'Brien's letter, board members inquired further into the alternative site that had been mentioned and raised concerns about whether Verizon had meaningfully considered the park site. Mr. Noland and Mr. Kruszynski suggested that the tower would be more visible on the alternative park site and noted a preference for the proposed location. However, Mr. Noland and Mr. Morton expressed concerns about whether the alternative park location had been adequately considered given the Township Trustee's renewed willingness to negotiate use of the space on account of concerns raised by residents.[5] Mr. Noland

---

[5] Notably, the record contains little information about the alternative park site, except that it is only three to four hundred feet from the fire station and was within the area where Verizon needed a tower [DE 29-1 at 81-82].

specifically commented that the level of opposition for the proposed residential location was "very unusual" from what he had experienced in nine years. Despite believing that Verizon needed the tower, Mr. Noland commented that it would be "very difficult to vote against the overwhelming opposition." Various local constituents also voiced their objections to having rent money going to a private non-resident property owner rather than the Township, and to the tower's being too visible on the proposed residential location. The Board recognized that similar concerns could be raised by others living near the alternative site.

Once public comments were heard, Mr. Catanzarite motioned to grant the Permit without further explanation. The motion was summarily seconded by Mr. Kruszynski. However, Mr. Telloyan, Mr. McCahill, Mr. Root, Mr. Noland, Ms. Hess and Mr. Morton voted against the Permit. As a result, the Board notified Hayes Towers that the Permit had been denied and rested on the hearing transcript to support its decision. The denial of the Permit precipitated this lawsuit by Hayes Towers.

## II. STANDARD OF REVIEW

Hayes Towers has requested summary judgment; however, it has been explained that summary judgment is inappropriate when a district court is asked to rule in "an appellate capacity." *Helcher v. Dearborn Cty.*, 500 F.Supp.2d 1100, 1108 (S.D. Ind. 2007), *aff'd*, 595 F.3d 710 (7th Cir. 2010); *Primeco Personal Communications v. City of Mequon*, 242 F.Supp.2d 567, 574 (E.D. Wis. 2003), *aff'd*, 352 F.3d 1147 (7th Cir. 2003) (affirming the district court which reasoned that "in cases involving review of municipal decisions under the [Telecommunications Act], summary judgment motions are cumbersome and unnecessary . . . The purpose of a summary judgment motion is to determine whether a case should proceed to trial, but in cases where courts review the decisions of other bodies the 'trial' has already taken place."). Thus, in

reality, the applicable standard of review is whether the municipal body's decision was "supported by substantial evidence." *Id*. (citing 47 U.S.C. § 332(c)(7)(B)(iii)).

The substantial evidence standard is highly deferential to the local government making the decision. *Helcher*, 595 F.3d at 723 (citing *VoiceStream Minneapolis, Inc. v. St. Croix County*, 342 F.3d 818, 830 (7th Cir. 2003)). The court applies the same test for substantial evidence under the TCA that is applied to the review of the decisions of administrative agencies. *Id*. (citing *PrimeCo*, 352 F.3d at 1148; *VoiceStream*, 342 F.3d at 830). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citing *VoiceStream*, 342 F.3d at 830). The party seeking to overturn the board's decision has the burden of proving that the decision is not supported by substantial evidence. *Id*. The Seventh Circuit has determined that there is no practical difference between the substantial evidence standard and the clear error standard, and so the relevant question is whether the board clearly erred in refusing to issue the permit. *Id*. (citing *PrimeCo*, 352 F.3d at 1149).

### III. DISCUSSION

The decision in this matter is guided by the provisions of the TCA and the Supreme Court's recent decision in *T-Mobile South, LLC v. City of Roswell, Ga*., 135 S. Ct. 808 (2015). The TCA generally preserves "the traditional authority of state and local governments to regulate the location, construction, and modification" of wireless communication facilities like cell phone towers, but imposes "specific limitations" on that authority. *Roswell*, 135 S. Ct. at 814 (citing *Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005); 47 U.S.C. § 332(c)(7)(B)). One of those limitations is that any decision to deny a request to build a tower "shall be in writing and supported by substantial evidence contained in a written record." § 332(c)(7)(B)(iii). Another is that parties adversely affected by a locality's decision may seek judicial review. § 332(c)(7)(B)(v).

In *Roswell*, the Supreme Court indicated that in order to determine whether a locality's denial was supported by substantial evidence, a court must be able to identify the reason or reasons why the locality denied the application. *Roswell*, 135 S. Ct. at 814 (citing *Rancho Palos Verdes*, 544 U.S. at 128 (Breyer, J., joined by O'Connor, Souter, and Ginsburg, JJ., concurring) (observing that the Act "requires local zoning boards . . . [to] give reasons for [their] denials 'in writing'")). Accordingly, while the TCA requires localities to "provide reasons" when they deny applications to build cell phone towers, those reasons need not appear in a specific type of document so long as they are "in writing" and "stated clearly enough to enable judicial review." *Id.* at 814-18. And since a locality may even rely on its meeting minutes to satisfy the writing requirement, this Court rejects any suggestion that a transcript of a public hearing itself cannot satisfy the writing requirement. *See Roswell*, 135 S. Ct. at 815–16 ("nothing in th[e] [TCA's statutory] text imposes any requirement that the reasons be given in any particular form"); *Helcher,* 595 F.3d at 723; *see also Smith Commc'ns, LLC v. Washington Cty., Ark.*, 785 F.3d 1253, 1257–58 (8th Cir. 2015) (reasoning that the county did provide a legally adequate explanation for its denial when it referred to the detailed meeting minutes); *Skyway Towers, LLC v. Lexington-Fayette Urban Cty. Gov't*, No. 5:15-301-KKC, 2016 WL 817133, at *6 (E.D. Ky. Feb. 29, 2016) (unpublished) (noting that a letter containing the reasons for the denial sufficed to meet the writing requirement).

Having said that, however, a review of the hearing transcript in this case reveals that it fails to supply the Board's reasons for rejecting the Permit sufficient to enable "substantial evidence" review. *See Helcher*, 595 F.3d at 719 (the written decision must contain a sufficient explanation of the reasons for the permit denial to allow a reviewing court to evaluate the evidence in the record supporting those reasons). More specifically, the agreed upon exhibits and

transcript of the Board's September 27th hearing reveal that a multitude of reasons for granting and rejecting the Permit were addressed and debated over a period of time. Yet, during the public hearing at which the final vote on the Permit took place, only four board members offered comments, questions, or concerns about the Permit, while the remaining four board members remained silent. Thus, the transcript discloses that an even split existed among the four board members who spoke, while the remaining four board members (who ultimately constituted the majority) left undisclosed their actual positions on the matter. Worse yet, the motion to approve the Permit was made and seconded without any explanation, and then six board members voted against the Permit without explicating the reasons behind their opposition. Thus, an examination of the record reveals no clear indication as to the *actual* reasons for the Board's rejection of the Permit sufficient to enable judicial review. *Compare Vantage Tower Grp., LLC v. Chatham Cty.-Savannah Metro. Planning Comm'n*, No. 4:13-CV-258, 2015 WL 300257, at *4 (S.D. Ga. Jan. 20, 2015) (unpublished) (finding that a letter announcing the WCF permit's denial and meeting minutes which did not reveal why the city denied the application was devoid of any reasons that could be discerned for purposes of judicial review) *with Stout & Co., LLC v. City of Bel Aire, Kansas*, No. 2:15-CV-09323-JTM, 2016 WL 3759440, at *6–7 (D. Kan. July 14, 2016) (unpublished) (holding that detailed meeting minutes enabled judicial review by demonstrating that after the council's final vote denying the special use permit to construct a WCF, the city attorney confirmed the specific zoning provisions upon which the council relied); *Skyway Towers, LLC v. Lexington-Fayette Urban Cty. Gov't*, No. CV 5:15-301-KKC, 2016 WL 817133, at *3 (E.D. Ky. Feb. 29, 2016) (unpublished) (finding sufficient the rejection of a WCF application based on the movant's explanation that "there [was] not adequate exploration of alternate locations in the potential search ring" and "there's not adequate consideration of

negative significant interest in the cultural and historic resources"); *PI Telecom Infrastructure, LLC v. City of Jacksonville, FL*, 104 F. Supp. 3d 1321, 1340 (M.D. Fla. 2015) (finding that rather than issuing a "blanket denial order," the commission's brief written order denying the WCF application sufficiently explained that the proposed tower was not compatible with the design and performance standards of the city ordinance and the uses, character, and aesthetics of the surrounding neighborhood).

Moreover, the solution proposed by Hayes Towers and the Board—that is, to have the Court pluck reasons from the record supporting their respective summary judgment positions—is itself problematic. First, post-hoc rationales cannot serve as substantial evidence. *See Roswell*, 135 S. Ct. at 816, n.3 (noting that "[t]he reviewing court would then need to ensure that those reasons are not post hoc rationalizations") (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)); *see also U.S. Cellular Corp. v. Bd. of Adjustment of City of Seminole, Okla.*, 180 F. App'x 791, 794 (10th Cir. 2006) (citing *National Tower, LLC v. Plainville Zoning Bd. of Appeals*, 297 F.3d 14, 20–21 (1st Cir. 2002); *Preferred Sites, LLC v. Troup County*, 296 F.3d 1210, 1219 (11th Cir. 2002)). Second, the presence of both potentially legitimate and illegitimate reasons for the Board's decision to deny the Permit make unworkable the task of determining whether the rationale behind the vote was supported by substantial evidence. *See e.g.*, *Primeco*, 352 F.3d at 1149-50 (generalized aesthetic concerns are insufficient to support a denial of a permit under the TCA; however, a new firm that has from a service standpoint two equally good alternative sites can rightly be compelled to place the antenna in the less conspicuous location); 47 U.S.C. § 332(c)(7)(B)(iv) (fear of adverse health effects from electromagnetic radiation which comply with FCC regulations may not prevent the placement of a WCF). In other words, by not detailing the reasons for denying the Permit during the meeting

or contemporaneously issuing a short statement explaining the rationale behind the board members' votes, the Board ran the very risk identified in *Roswell*. That is, it ran the risk that "upon review of the record, [the] court will either find that it could not ascertain the locality's reasons or mistakenly ascribe to the locality a rationale that was not in fact the reason for the locality's denial." *Roswell*, 135 S. Ct. at 816. Here, the Court finds that it cannot ascertain the reason for the Board's decision.

Though, to repeat, the Court acknowledges that local zoning authorities are not required to issue an elaborate rationale in order to comply with the TCA, yet they must issue some clear written explanation of their reasoning based on the evidence submitted. *See Sprint Spectrum, LP v. City of Jeffersonville Bd. of Zoning Appeals*, No. 4:05CV154-SEB-WGH, 2008 WL 833494, at *4 (S.D. Ind. Mar. 27, 2008). Here, the final vote that took place to reject the Permit provides so little insight into the basis for the Board's final decision that no one reviewing it, including the Court, is able to glean an understanding of the Board's reasoning in response to the evidence submitted. *See id*. Thus, in order to enable review, the Board must lay out its findings and conclusions in a way that explains the basis for whatever its decision might be. Given the fact that there existed sufficient evidence for the Board to make a reasonable decision, the absence of bad faith in the omission of an adequate written statement underlying its decision, and the fact that the placement of this tower was years in the making prior to the complaint being filed in this Court, the appropriate remedy for this violation is to remand this matter for further proceedings consistent herewith. *See Roswell*, 135 S. Ct. at 819 (Alito, J., concurring) ("the ordinary rule in administrative law is that a court must remand errors to the agency 'except in rare circumstances' . . . [n]othing we say today should be read to suggest that when a locality has erred, the inevitable remedy is that a tower must be built."); *see also*, *Vantage Tower Grp., LLC*, 2015 WL 300257, at

*5 (noting that the TCA does not provide a remedy for violations of its substantive provision, rather, the decision whether to remand or to issue an injunction is left to the discretion of the court).

Of final note, to the extent Hayes Towers moved for summary judgment on the argument that the Permit's rejection effectively prohibited Verizon from providing wireless communication services or unreasonably discriminated between wireless providers, *see* 47 U.S.C. § 332(c)(7)(B)(i), the Court rejects the same. The undisputed facts concerning the Trustee's willingness to consider a reasonable alternative Township site that would resolve Verizon's interrupted coverage, the lack of follow-up on use of the park site, and the existence of the agreement not to interfere with AT&T's arrangement with the Township, all demonstrate that the current record does not support judgment on these claims. *See, e.g., Helcher*, 595 F.3d at 727-29.

## IV. CONCLUSION

For those reasons, the Court DENIES Hayes Towers' motion for summary judgment [DE 30] and REMANDS this matter to the Board for further expeditious proceedings consistent with this opinion.

SO ORDERED.

ENTERED: December 5, 2017

         /s/ JON E. DEGUILIO
         Judge
         United States District Court