UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHARLES S. HAYES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:16-CV-730-JD |
| | ) |
| BOARD OF COMMISSIONERS | ) |
| OF THE COUNTY OF ST. JOSEPH, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Charles S. Hayes ("Hayes Towers") filed an amended verified complaint seeking declaratory relief against the Board of Commissioners of the County of St. Joseph ("the Board")[1] because the St. Joseph County Council ("the Council")[2] denied Hayes Towers a Special Use Permit ("Permit") to build a telecommunications tower on a residential plot of land that it leased for that purpose. Hayes Towers moved for summary judgment arguing that the decision to deny the Permit was in violation of the Telecommunications Act of 1996 ("TCA") because it was not based on "substantial evidence." In response, the defense argued that substantial evidence supported the Permit's denial because the record revealed that the tower would adversely affect

---

[1] At the outset of this litigation, Defendants moved to dismiss the original complaint on the basis that it inappropriately named the County and County Council, and failed to name the proper party—the Board of Commissioners [DE 10]. In response, Hayes Towers amended the complaint and named only one defendant, the Board [DE 16]. While the same defense counsel now indicates that any remand should be directed to the Council [DE 44 at 4, fn. 1], this argument is untimely and waived. *RK Co. v. See*, 622 F.3d 846, 850-51 (7th Cir. 2010) ("we too hold that 'real party in interest' is a defense subject to waiver"); *see Fogel v. Gordon & Glickson, P.C.,* 393 F.3d 727, 733 (7th Cir. 2004) (Rule 15(a), governing the amending of complaints, cannot be used after final judgment has been entered to add another party to the judgment).

[2] At the time, the Council was comprised of the following individuals: Mr. Robert L. Kruszynski, Mr. Corey Noland, Ms. Diana Hess, Mr. Rafael Morton, Mr. Mark P. Telloyan, Mr. Mark A. Catanzarite, Mr. Robert McCahill, Mr. Mark Root, and Mr. James O'Brien.

property values and because alternative sites were available, viable, and more desirable [DE 34 at 11-13].

Ultimately, the Court denied Hayes Towers' motion for summary judgment and remanded the matter for further expeditious proceedings [DE 41]. In so doing, the Court held that: an examination of the record revealed no clear indication as to the actual reasons for the rejection of the Permit sufficient to enable judicial review; the Court could not "pluck reasons from the record" supporting the parties' respective summary judgment positions, because: (1) post-hoc rationales cannot serve as substantial evidence, *see T-Mobile S., LLC v. City of Roswell, Ga.*, 135 S. Ct. 808, 816, n.3 (2015), and (2) present were both legitimate and illegitimate reasons for the decision to deny the Permit; and finally, remand of the matter was appropriate given the lack of bad faith and the fact that sufficient evidence existed for a reasonable decision.

Hayes Towers has sought reconsideration of the Court's findings [DE 43]. Hayes Towers argues in pertinent part that it was improper for the Court to remand the matter because such a remedy was never sought by the defense or contemplated in the parties' briefs, and because remand causes further delay in violation of the statute and case precedent. Hayes Towers also argues that had the Court rendered a determination on the merits as to whether substantial evidence existed in the stipulated record[3] to support the Permit's denial, then it would have answered the inquiry in the negative. In response, the defense argues that no manifest errors of law or fact occurred and no newly discovered evidence had been presented so as to make reconsideration appropriate [DE 44]. The defense then filed a transcript of a Council meeting subsequently held on February 13, 2018, which indicated that in an attempt to comply with the

---

[3] The parties agreed that the documents filed at DE 24, as amended at DE 29, constitute a certified copy of the complete record of proceedings [DE 27].

Court's order of remand, the individual council members provided their reasons for initially denying the Permit in September 2016.

On March 1, 2018, the Court held oral argument on the motion for reconsideration [DE 53]. During that hearing, defense counsel conceded that the Council violated the TCA's writing requirement by failing to set forth its reasons for denying the Permit. Having said that, defense counsel argued (as it did in response to the original motion for summary judgment [DE 34 at 12-13]), that the legitimate reasons for the Permit's denial included: assertions by property owners that the tower would diminish their property values, and a viable alternative site existed based on emails from the Township Trustee [DE 29-1 at 11].

For the reasons set forth below, the Court GRANTS the motion for reconsideration [DE 43], and the Court modifies the remedy it deems appropriate under the circumstances presented by this case.

## I. FACTUAL BACKGROUND

The facts in this matter are not in dispute and are set forth in the stipulated record. For the sake of completeness, the Court sets forth the facts as it views them.

After determining that a deficiency existed in its cellular network in Harris Township, Granger, Indiana, which caused dropped calls, inability to access the network, and customer complaints, Verizon began working with the Harris Township Trustee in early 2014 regarding the installation of new equipment. Verizon offered to rebuild an existing tower on the Township's fire station property so that it would have the capacity to service multiple cellular providers, including AT&T, who was already paying the Township to use the existing tower. Verizon provided a site plan, lease agreement, and presented the design options to the Trustee. However, complications over the ownership of the fire station tower and plans to expand the fire

station left the Trustee unwilling to enter an arrangement with Verizon at the time. After two years of trying to put the tower on Township property and getting "shot down" by the Trustee, Verizon started looking for another location.

Thus, in June 2016, Hayes Towers entered into a lease with property owner Amir Pouya to build its telecommunications tower on his residential plot of land located off of Elm Road that would allow Verizon and other carriers to lease space on it for necessary antennas and equipment. On August 3, 2016, the Board of Zoning Appeals ("BZA") unanimously voted to send the Permit to the Council with a favorable recommendation.[4] The BZA's findings of fact indicated that the proposed special use would not injure the public health, safety, morals, or general welfare of the community, would improve the appearance of the neighborhood and not devalue the surrounding properties, and would blend into the overall comprehensive plan [DE 29-1 at 4].

On August 22, 2016, the Harris Township Trustee indicated that given resident concerns about locating a new tower on residential land, it would be "open to working toward installation of" a tower near the fire station, which would maintain lease revenues for the Township [DE 29-1 at 11]. Hayes Towers and the Trustee then met and reopened discussions about this newly proposed construction site (later identified as being on or near the Township's park). On September 20, 2016, the Trustee informed council member Jamie O'Brien that "[t]he township stands ready to continue working toward the use of township land for a tower." *Id*. However, the same letter also said that "no agreement is in place nor can it be assumed" for this "probably . . .

---

[4] Because Hayes Towers intended to build a new wireless communications facility in a residentially zoned district, St. Joseph County zoning ordinances require a special use permit. *See* St. Joseph County Planning and Zoning, Special Regulations for Wireless Telecommunications Facilities, Chapter 154.457(C). Further, in St. Joseph County, the elected body (not the BZA) has the final say on all variances and special use requests because of the population of the county. Ind. Code § 36-7-4-918.6.

4

acceptable site," and that it was possible that "various approvals may be required, and that a public bid process may be necessary." *Id*.

A public hearing was held on September 27, 2016, during which the Council reviewed and discussed the Hayes Towers' Permit request. The transcript of this meeting [DE 29-1 at 77-84] reveals that the following transpired: the BZA representative indicated that despite some opposition to a new tower by those living in close proximity to its proposed residential location, the BZA gave a favorable recommendation for the Permit.

Evidence supporting the Permit's passage was then discussed during the Council meeting, including: the need for better cellular service in the area given the number of customer complaints and the increased use of cellular service (including use for emergency calls); confirmed compliance with general standards for special use permits and with the Federal Communications Commission's ("FCC") regulations for emissions; the existence of an agreement by Hayes Towers not to interfere with income generated by Harris Township from AT&T for AT&T's use of the existing tower on the fire station's property; the history of Verizon's earlier unsuccessful negotiations with the Trustee for use of Township property; the willingness of Hayes Towers to use landscaping and fencing around the new tower which would be located toward the back of the residential property among trees and an existing high tension power line; and independent appraisal results indicating that the new tower would not likely have a negative impact on nearby property values.

Evidence supporting the rejection of the Permit's passage was also discussed during the Council meeting, including: generalized concerns by local residents about safety during and after construction; the possible impact of radio frequency emissions; the possible negative impact of the construction on the environment and wildlife; the unappealing aesthetics of the tower and

perceived negative impact that it would have on nearby home values; the perceived disparate impact of attempting to place another tower in a less affluent part of the county; the uncertain need for better coverage given that some network users indicated that there were no coverage problems; and, the potential for alternate sites that would generate revenue for the Township while being located near an existing tower (especially given the Trustee's willingness to consider allowing a new tower to be built near the fire station in the Township park). Because Mr. O'Brien was absent from the meeting, he submitted a letter which indicated that as the representative for the district involving the proposed tower's residential placement, he had received "[u]niversal opposition" to the tower from "every single person, other than Ms. Hayes [President of Hayes Towers] who is advocating for this project." Mr. O'Brien referenced the Trustee's willingness "to work toward a location near the fire station." Given the various concerns Mr. O'Brien raised, he requested that his fellow council members vote against the Permit (reminding them that he had consistently voted with council members who represented districts where zoning issues arose).

Following the reading of Mr. O'Brien's letter, council members inquired further into the alternative site that had been mentioned and raised concerns about whether Verizon had meaningfully considered the park site given the Township Trustee's renewed willingness to negotiate use of the space. Mr. Peter Agostino confirmed that after the alternative Harris Township site was resurrected, Ms. Hayes "did do what was asked of her" by meeting with the Trustee; however, the Trustee was only "open to the idea of negotiating for the park property but . . . no agreement was ever reached . . . [and he could not] comment on the timing issues or feasibility of the tower" on park property, except to say that there was a willingness by the Trustee to consider it.

Mr. Noland and Mr. Kruszynski suggested that the tower would be more visible on the alternative park site and noted a preference for the proposed location. However, Mr. Noland then commented that the level of opposition for the proposed residential location was "very unusual" from what he had experienced in nine years. Despite believing that Verizon needed the tower, Mr. Noland stated that it would be "very difficult to vote against the overwhelming opposition." The Council also recognized that similar concerns could be raised by others living near the alternative site—and it was unclear the level of opposition that might be received.

Various local constituents also voiced their objections to having rent money going to a private non-resident property owner rather than the Township, and to the tower's being too visible at the proposed residential location. One audience member indicated that had he known a tower was going up, then he "probably" would not have bought his property. At least three others wrote letters generally suggesting that the tower would be detrimental to their property values, while a fourth remonstrator cited national statistics concerning the desirability of buying a home near a tower and drawing from it that his home would be "undesirable to any potential buyer."

Once public comments were heard, Mr. Catanzarite motioned to grant the Permit without further explanation. The motion was summarily seconded by Mr. Kruszynski. However, Mr. Telloyan, Mr. McCahill, Mr. Root, Mr. Noland, Ms. Hess and Mr. Morton voted against the Permit. As a result, Hayes Towers was notified that the Permit had been denied and the Council rested on the hearing transcript to support its decision. The denial of the Permit precipitated this lawsuit by Hayes Towers.

## II. STANDARD OF REVIEW

The motion to reconsider was filed within the 28-day period for filing a motion under Fed. R. Civ. P. 59(e) to alter or amend the judgment, which brings up the underlying judgment for review. *Tango Music, LLC v. DeadQuick Music, Inc.*, 348 F.3d 244, 247 (7th Cir. 2003). A

Rule 59(e) motion will be successful only where the movant clearly establishes: "(1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (quoting *Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012)).

### III. DISCUSSION

The question presented for reconsideration is whether the Court improperly remanded the case after finding that the Defendant violated the TCA by failing to supply the actual reasons for rejecting the Permit sufficient to enable "substantial evidence" review. *See T-Mobile South, LLC v. City of Roswell, Ga.*, 135 S. Ct. 808, 814-18 (2015) (in order to determine whether a locality's denial was supported by substantial evidence, the reasons need not appear in a specific type of document so long as they are "in writing" and "stated clearly enough to enable judicial review"); *Helcher v. Dearborn Cty.*, 595 F.3d 710, 719 (7th Cir. 2010) (the written decision must contain a sufficient explanation of the reasons for the permit denial to allow a reviewing court to evaluate the evidence in the record supporting those reasons). While the parties agree that no particular remedy is mandated for a TCA violation, Hayes Towers argues that it was inappropriate to remand the case because Defendant never requested a remand and the parties were never given the opportunity to be heard on the issue. *See PrimeCo Pers. Commc'ns, Ltd. P'ship v. City of Mequon*, 352 F.3d 1147, 1151 (7th Cir. 2003) ("the City has not requested such relief [of remand], and so the district court was right to order that the permit be issued.").

The Court agrees that reconsideration of its prior Order is appropriate here. First, it is uncontested that the defense never requested a remand and the propriety of this remedy was never briefed by the parties until now. *See Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (a motion for reconsideration might be proper if the court has made a decision outside the adversarial issues presented to the court by the parties, or has

8

made an error not of reasoning but of apprehension) (citation omitted). Moreover, just recently another court under similar circumstances issued an injunction, rather than a remand. *See Indus. Tower & Wireless, LLC v. Esposito*, No. CV 17-057-JJM-PAS, 2018 WL 526334, at *4 (D.R.I. Jan. 22, 2018) (ordering passage of the special use permit where "[t]he discussion in the meeting minutes among Board members, raising the pluses and minuses of the application does not enable the Court to evaluate the evidence in support of the Board's denial[,] [and] [t]he Court cannot speculate about what specific evidence convinced the Board members to deny the application."). Second, new evidence has been submitted by the defense for the Court's consideration—that is, the transcript of the Council meeting held on February 13, 2018, which reveals the Council's response to the December 2017 Order of remand. *See Cincinnati Life Ins. Co.*, 722 F.3d at 954. Thus, the Court must reconsider whether remand is the appropriate remedy given the Court's determination that a violation of the TCA occurred—a violation which the defense now concedes.

In *PrimeCo*, the Seventh Circuit commented for the purpose of "completeness," but without taking a position on the issue, that *New Par v. City of Saginaw*, 301 F.3d 390, 399-400 (6th Cir. 2002) and *Preferred Sites, LLC v. Troup Cty.*, 296 F.3d 1210, 1220-22 (11th Cir. 2002), along with the cases cited therein, express skepticism about the appropriateness of remands to local authorities because of the delay that a remand causes in the final resolution of the dispute. 352 F.3d at 1151. One reason often cited for issuing an injunction is that the TCA requires a "court of competent jurisdiction" to "hear and decide [an action arising from a violation of § 704(a)] on an expedited basis." 47 U.S.C. § 332(c)(7)(B)(v). Given this, a number of courts have considered this issue and held that an injunction (or other equitable relief) in the form of an order requiring issuance of the relevant permits is a proper form of relief under § 704(a). *See New Par*,

301 F.3d at 399-400 (listing cases). Another reason often cited for issuing an injunction is based on the utility—or lack thereof—of a remand. *See id.* (citing *Brehmer v. Planning Bd*., 238 F.3d 117, 121 (1st Cir. 2001) ("Because all relevant evidence was adduced at the initial hearing . . . a remand to the Planning Board would serve no useful purpose"); *Omnipoint Corp. v. Zoning Hearing Bd.,* 181 F.3d 403, 410 (3d Cir. 1999) ("the Board has not suggested that any purpose would be served by remand"); *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 497 (2d Cir. 1999) ("remand would serve no useful purpose in this case")); *but see, Vantage Tower Grp., LLC v. Chatham Cty.-Savannah Metro. Planning Comm'n,* No. 4: 13-CV-258, 2015 WL 300257, at *4 (S.D. Ga. Jan. 20, 2015) (ordering a remand where "[t]he Court cannot even reach the question of whether substantial evidence supports the City's decision because the City did not explain with sufficient specificity why it acted the way it did."); *PrimeCo Pers. Commc'ns, L.P. v. Vill. of Fox Lake,* 26 F. Supp. 2d 1052, 1066 (N.D. Ill. 1998) (given comity to local governments in making zoning decisions and the unsettled law as to what constitutes a sufficient written decision and substantial evidence under the TCA, the court declines plaintiff's request for a writ of mandamus and remands for additional proceedings).

In this case, Verizon has been working on getting a tower built in the Granger area for approximately four years. Since early 2014, Verizon attempted to build the tower on Township property, and offered workarounds for the problems that arose, but ultimately the Trustee wasn't interested in closing the deal for use of Township property. Only after Hayes Towers entered into a lease with a private property owner to build the tower on his residential plot of land, and only after the BZA unanimously voted to send the Permit to the Council with a favorable recommendation, did the Trustee indicate a renewed willingness to entertain negotiations for building the tower on another Township site. Despite the Trustee's willingness to negotiate, as of

September 2016, the Trustee confirmed that a number of preliminary steps would still need to be completed for use of Township land and that no agreement could be assumed.

In sum, since Verizon first endeavored to build a tower that would eliminate the wireless coverage gap in Granger, tremendous delay has occurred through no apparent fault of Verizon or Hayes Towers. To make matters worse, four months have passed since the Court remanded the case; and rather than providing notice and re-tabling consideration of the Permit through legitimate means, the Council has responded by standing by its initial denial, supplemented only with post-hoc rationalizations[5] violative of *Roswell*. *See Roswell*, 135 S. Ct. at 816-18 (finding that the TCA's writing requirement was violated when it took 26 days after the denial to provide the reasons). Under the circumstances presented by this case, the Court finds that much of the relevant evidence was adduced at the initial Council hearing and there appears to have been no movement toward the proper reconsideration of the Permit. Ultimately, the Council violated the TCA by not providing sufficiently contemporaneous reasons for denying the Permit, and it appears that any further reasonable efforts by Hayes Towers are so likely to be fruitless that it is a waste of time even to try. The Court agrees with Hayes Towers that remanding this case will result in further unwarranted delay and serve no useful purpose. As a result, the Court finds that the record compels the conclusion that the defense's actions justify the issuance of an injunction

---

[5] The Court respectfully disagrees with defense counsel's argument that a distinction can be drawn between post-hoc "rationalizations" and later provided "iterations" of the rationalization. Rather, the law requires the "reasons" for the Permit's denial to be provided essentially contemporaneously with the denial. *See, e.g., Roswell*, 135 S. Ct. at 818 ("a locality cannot stymie or burden the judicial review contemplated by the statute by delaying the release of its reasons for a substantial time after it conveys its written denial," and thus, "[a] locality may satisfy its statutory obligations if it states its reasons with sufficient clarity in some other written record issued essentially contemporaneously with the denial").

requiring the granting of the Special Use Permit (and encompassed variance) necessary for the construction and operation of the proposed tower at the proposed location.

While the above discussion provides a sufficient independent basis warranting the issuance of an injunction for the instant TCA violation, the Court would note that Hayes Towers has argued, quite convincingly, that the written record also reveals that the Council's decision could not have been supported by substantial evidence. *See Helcher*, 595 F.3d at 719 (noting that a decision in writing is adequate if it provides an explanation that allows us, in combination with the written record, to determine if the decision is supported by substantial evidence). While the Court had previously indicated that sufficient evidence existed for the Council to make a reasonable decision, Hayes Towers points out that the bases offered (and consistently relied on since) for rejecting the Permit were not supported by substantial evidence. Thus, the Court agrees with Hayes Towers' position that the Court ought to engage in the substantial evidence review, rather than maintain the position that "the presence of both potentially legitimate and illegitimate reasons . . . make unworkable the task of determining whether the rationale behind the vote was supported by substantial evidence." [DE 41 at 9].

A reasonable decision whether to approve the construction of a tower requires balancing the contribution that the tower will have on the availability of wireless service,[6] with the harm caused by the tower (such as unsightliness, loss of property value, and environmental or safety effects). *PrimeCo*, 352 F.3d at 1149. In this case, it is uncontested that the defense has

---

[6] Some remonstrators indicated that they did not experience interrupted cellular service in the area and therefore they questioned the need for the tower [DE 29-1 at 8, 23, 79]. However, during oral argument, defense counsel agreed that there was no evidence in the record to refute that the tower was needed. In fact, representations made by Ms. Anne Hayes and Mr. Bryan Donley (representative of Verizon) indicated that Verizon received many complaints and trouble tickets about inadequate wireless service in the area. This evidence is unrefuted. Moreover, Mr. Nolan specifically acknowledged during the Council meeting that the tower was "going to happen" and that Verizon "needed it" [DE 29-1 at 83]. Accordingly, no substantial evidence would support denying the Permit on this basis.

consistently rested on two grounds for denying the Permit—that is, the diminishment of property values and the existence of an alternative site. Resting on these bases alone makes sense because the concerns raised about the possible adverse health effects from electromagnetic radiation which were shown to comply with the FCC's regulations could not prevent the placement of the tower. 47 U.S.C. § 332(c)(7)(B)(iv). Moreover, only generalized concerns were raised about: safety issues during and after the tower's construction; the negative impact on the environment and wildlife; the disparate impact of a tower in a less affluent part of the county; and the unappealing aesthetics of a tower. In other words, these fears were not grounded in the specific facts of the case or substantiated by objective evidence; rather, they were premised on speculation and a general dislike for towers, which do not provide the substantial evidence necessary to support the denial of the Permit. *See, e.g., Helcher*, 595 F.3d at 723 (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

One more thing is worth mentioning with respect to the aesthetics of the tower. The Court acknowledges that aesthetics may constitute a valid basis for denial of a Permit in some instances. *See e.g., VoiceStream Minneapolis, Inc. v. St. Croix Cty.*, 342 F.3d 818, 832 (7th Cir. 2003) (the county's determination that the proposed tower would adversely affect the aesthetic harmony of the riverway was grounded in the specifics of the case and was not based on conjecture or speculation; rather, it was based on an on-site investigation and a map prepared from the wireless carrier's crane test, documenting how visible the tower would be from various nearby locations). With respect to this case, Hayes Towers provided before and after photos to demonstrate the visual impact presented by the tower at the proposed site [DE 29-1 at 75-76]. However, those who voiced concerns that the tower would be aesthetically unpleasing did not do

so premised on these photos or similar demonstrative facts, so as to support a reasoned conclusion that the tower would interfere with the overall appearance of the neighborhood. One remonstrator specifically contended that the tower would not be adequately covered by foliage, but this was directly contradicted by Ms. Hayes' testimony that the tower (once built) would be located in a backyard, surrounded by foliage, properly landscaped, fenced off, and located next to a currently existing tower. This testimony was buttressed by the BZA's findings that the proposed special use would actually improve the appearance of the neighborhood and blend into the overall comprehensive plan. Accordingly, as conceded by the defense, the Court finds that there was not substantial evidence before the Council to deny the Permit based on generalized aesthetic concerns. *Primeco*, 352 F.3d at 1149-50 (generalized aesthetic concerns are insufficient to support a denial of a permit under the TCA). *See also VoiceStream*, 342 F.3d at 831 (because few people would argue that telecommunications towers are aesthetically pleasing, a local zoning board's aesthetic judgment must be grounded in the specifics of the case); *Preferred Sites, LLC*, 296 F.3d at 1220 (even construing the generalized concerns voiced about aesthetics at the hearing as opposition contained in the written record, such meager evidence is insufficient to support the denial of the application).

The Court now turns to the reasons proffered by the defense in support of the Permit's denial, the existence of an alternative site and the adverse impact on property values.

A wireless provider that has, from a service standpoint, two equally good alternative sites can rightly be compelled to place the antenna in the less conspicuous location. *See Primeco*, 352 F.3d at 1149-50. On the other hand, mere allegations that another site is available does not constitute substantial evidence. *See Sprintcom, Inc. v. Vill. of Mundelein*, No. 98 C 4451, at *6–7 (N.D. Ill. Aug. 20, 1999). The instant record shows that on January 28, 2016, the Trustee advised

14

Verizon that he had "no plans to add tower capacity in the near term." [DE 29-1 at 26]. Some seven months later, the Trustee had a change of heart and indicated a willingness to reconsider building a tower on Township property [DE 29-1 at 11]. Despite having already signed a lease to build the tower on a residential site and despite having the plan favorably approved by the BZA, Ms. Hayes met with the Trustee to discuss using park property. Ultimately, no agreement was reached. And even though the Trustee stood "ready to continue working toward the use of township land for a tower," this didn't eliminate the various logistical steps necessary to make Township property a viable option. *Id*. In fact, even the Council recognized that consideration of an alternative site would bring in another set of remonstrators. To this date, whether or not a tower could ever be built on Township property remains an open question. And because so little information is known about the alternative site, there is insufficient evidence to indicate that it had to be considered a preferred site under local zoning ordinances. In short, the Trustee's offer to negotiate use of Township property for the tower's placement does not constitute substantial evidence that an alternative location was available. *See Sprintcom*, No. 98 C 4451, at *6–7.

The other reason that the defense stated as grounds to deny the Permit was the alleged impairment of property values near the proposed site. Typically, wireless telecommunication providers pressing successful substantial evidence claims under the TCA have offered affirmative independent evidence to the zoning authority indicating that the proposed facility will not adversely impact property values. *AT&T Wireless PCS, Inc. v. Town of Porter*, 203 F. Supp. 2d 985, 996–97 (N.D. Ind. 2002) (listing cases). Here, Hayes Towers submitted a report from a real estate appraiser, who, after reviewing the plans for the proposed tower, visiting the site, and assessing the real estate in the proposed area, opined that the tower would not have a negative impact on real estate values in the area. No one called into question the appraiser's qualifications

15

or opinions. Moreover, the BZA similarly determined that granting the Permit would not result in a devaluation of the surrounding properties.

The only contrary evidence in the record in this respect consisted of a few residents who spoke about their fears that the tower could reduce their property values, and another resident who cited national statistics concerning the undesirability of buying a home near a tower which did not relate directly to the properties at issue. Still another individual indicated that he probably wouldn't have bought his property had he known a tower would be built nearby.

While it is true that homeowners may testify as to the value of their land, *see, Harper v. Goodin*, 409 N.E.2d 1129, 1134 (Ind. App. Ct. 1980), this doesn't necessarily constitute substantial evidence in the context of the TCA. *See Telespectrum, Inc. v. Pub. Serv. Comm'n of Kentucky*, 227 F.3d 414, 424 (6th Cir. 2000) (while the objecting residents may have been credible, sympathetic witnesses, their testimony about property values and alternative sites was no more than unsupported opinion). In fact, none of the remonstrators identified any evidence to support their concerns, nor did they indicate to what extent they believed their homes would be devalued based on the visibility of the proposed tower from their specific locations. *See Cellular S. Real Estate, Inc. v. City of Germantown*, No. 2:12-CV-02888-JPM, 2015 WL 3852781, at *7 (W.D. Tenn. June 22, 2015) ("these opinions are not based on objective evidence, and instead amount to asserting: 'not in my backyard.'"). Thus, these generalized concerns could hardly trump a qualified expert's testimony concerning the effect of the tower on home values. *See, e.g., Allentown Mack Sales & Serv., Inc. v. N.L.R.B.*, 522 U.S. 359, 378, 118 S. Ct. 818, 829, 139 L. Ed. 2d 797 (1998) (explaining in the substantial evidence context: "When the Board purports to be engaged in simple factfinding, unconstrained by substantive presumptions or evidentiary rules of exclusion, it is not free to prescribe what inferences from the evidence it will accept and

reject, but must draw all those inferences that the evidence fairly demands."). As such, the Court finds that the Council had an insufficient basis to draw an inference that the tower in the proposed location (already marked by other high tension towers and lines) would devalue nearby real estate. In sum, a few generalized expressions of concern with aesthetics cannot serve as substantial evidence for purposes of § 332(c)(7)(B)(iii); and, similarly, a few generalized concerns about a potential decrease in property values, especially in light of the plaintiff's contradictory expert testimony, does not seem adequate to support a conclusion that the Permit should be denied. *See Omnipoint Corp.*, 181 F.3d at 409; *Cellular Telephone*, 166 F.3d at 496.

Accordingly, the Council's rejection of the Special Use Permit application was not based on substantial evidence in the written record as required by the TCA.

## IV. CONCLUSION

For those reasons, the Court respectfully GRANTS Hayes Towers' motion for reconsideration [DE 43] of the summary judgment ruling and ORDERS that the Special Use Permit (and encompassed variance) be granted as necessary for the construction and operation of the proposed tower at the proposed location.

SO ORDERED.

ENTERED: March 26, 2018

                                            /s/ JON E. DEGUILIO
                                            Judge
                                            United States District Court